**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MAURICE DELEE,

                                        Petitioner,

          v.                                                        No. 11-CV-653
                                                                         (MAD/CFH)
HAROLD GRAHAM,
Superintendent,

                                        Defendant.[1]

_____

**APPEARANCES:**                                **OF COUNSEL:**

MAURICE DELEE
07-B-0369
Petitioner Pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ERIC T. SCHNEIDERMAN                THOMAS B. LITSKY, ESQ.
Attorney General for the                          Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

          Petitioner pro se Maurice DeLee ("DeLee") is an inmate currently in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS") at

_____

          [1]  DeLee has identified Graham as a superintendent at Auburn Correctional Facility.
Am. Pet. (Dkt. No. 5) at 1.

          [2]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Auburn Correctional Facility ("Auburn"). On August 25, 2006, after a jury trial, DeLee was found guilty in Onondaga County Supreme Court of burglary in the first degree, attempted robbery in the second degree, and assault in the second degree. See Am. Pet. (Dkt. No. 5) ¶¶ 1–2, 4–6; Dkt. No. 17-7 at 2. DeLee was sentenced to a determinate term of fifteen years with five years post-release supervision for the count of burglary in the first degree, and a determinate term of seven years with five years of post-release supervision for each of the two remaining counts, to run concurrent. Dkt. No. 17-7 at 2; Tr. #3 (Dkt. No. 17-20) 237–38.[3] DeLee is presently serving that sentence.[4]

DeLee now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) he received ineffective assistance of trial counsel; (2) the evidence was legally insufficient to establish his guilt and the verdict was against the weight of the evidence; (3) the prosecution engaged in misconduct during the course of the related criminal matter; (4) the trial court's failure to "correct [the] prosecutorial misconduct when perjury was committed" amounted to a "breach of judicial powers"; and (5) he was deprived of a fair trial as a result of cumulative errors created by ineffective counsel, breach of judicial powers, and prosecutorial misconduct. Am Pet. at 4–5. Respondent opposes DeLee's amended petition. Resp't Mem. of Law (Dkt. No. 16). DeLee filed a traverse in response to respondent's opposition. Dkt. No. 20. For the reasons that follow, it is recommended that

---

[3] The page numbers following "Tr. #" refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

[4] DeLee commenced service of his sentence on January 31, 2007. See DOCCS, INMATE POPULATION INFORMATION SEARCH, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000 (lasted visited Dec. 19, 2012).

the amended petition be denied.

## I. Background

### A. The Trial

#### 1. The Prosecution's Case

On February 2, 2006, Melissa Males ("M. Males") was living with her mother Karen Males ("K. Males") in Clay, New York, along with Michael Stevens ("Stevens"), a boarder. Tr. #2 (Dkt. No. 17-19) at 128–29. At around 3:30 a.m., M. Males was watching a movie with her friend Jennifer Demaio ("Demaio") in the living room. Id. at 129–30. Demaio left to use the bathroom, after which the door to the house was kicked in and three men entered. Id. at 130–32. One man, who was dark-skinned and wore dark clothing, a hooded sweatshirt, black leather gloves, and no mask, held down M. Males and threatened to kill her if he did not "find the stuff" that he was looking for. Id. at 133–34, 155.

Meanwhile, the two other men found Stevens in his bedroom upstairs. Tr. #2 at 133, 308–310. One man was dark-skinned and wore dark clothing, a hooded sweatshirt, gloves, and no mask. Id. at 326–27. The other man wore dark clothing and a mask. Id. at 326. The two men asked Stevens for the location of money and marijuana then one of the men struck Stevens in the head several times and tried to tie him up with headphone cords. Id. at 309–11. As a result, Stevens sustained a welt on his cheek, which he attended to with ice and pain medication. Id. at 338–39.

When Demaio was in the bathroom, she heard a door being kicked open as well as M. Males's screams. Tr. #2 at 165–66. Demaio called 911 and yelled out for K. Males. Id. at

166–67. K. Males woke up and left her bedroom after hearing Demaio scream her name. Id. at 366. The man who wore a mask accosted K. Males and led her downstairs. Id. at 168–69, 171, 366; Tr. #3 at 1. Demaio saw K. Males being led down the stairs by a man whom she recognized as Anthony Minasian, an acquaintance. Tr. #2 at 168–69, 171. Minasian recognized Demaio, pulled the phone cord out of the wall, and pushed Demaio into the bathroom. Id. at 170.

When Police Officer Shaver arrived at the house, he saw two men dressed in dark clothing and face masks and ordered them to get down on the floor. Tr. #2 at 191–93, 202. Instead of complying with Shaker's order, both men left the house through a side door. Id. at 193–94. Both Officer Walker and Deputy Sheriff Passino arrived at the house shortly after Shaver and saw two men running away from the house. Id. at 286–87, 356. However, while Walker saw that the two men were wearing masks, Passino did not see them with masks. Id. at 288, 356.

After a foot pursuit, Shaver, Walker, and Passino stopped DeLee and Minasian. Tr. #2 at 287–88, 291, 356–57, 366. Walker removed a black mask from Minasian's face. Id. at 289–290. During the course of the pursuit, Shaker heard glass breaking in the house. Id. at 197. The third man had fled the crime scene by jumping out of a window. Id. at 313. Shortly after DeLee was taken into custody, an ambulance was called to take him to the hospital because he was laying and flailing on the ground. Id. at 291, 300. Later on that day, Detective Timmerman arrived at the crime scene to conduct an investigation and found black leather gloves, a flashlight, and a black baseball cap behind the house. Id. 212–13, 280–81.

After DeLee and Minasian were apprehended and taken into custody, Passino saw two

women, Anna Padilla and Christine Anson, across from the house, and interviewed them individually.  Tr. #2 at 350–52.  Padilla gave her purse to Passino, at which point Passino saw in plain view DeLee's driver's license near the top of the purse.  Id. at 353. Both a knife and a box cutter were found in that purse.  Id.  Two vehicles that were associated with Padilla and Anson were taken into custody and a bag of marijuana was found in the car associated with Padilla.  Id. at 230–31, 263.


### 2.  The Defense's Case

Padilla and DeLee were childhood friends who began dating around a year prior to the criminal incident on February 2, 2006.  Tr. #3 at 30.  On the evening of February 1, 2006, Padilla and DeLee went out for dinner and alcoholic drinks until around 2:00 a.m.  Id. at 30–31, 34.  Minasian met up with the couple that night and all three individuals traveled to Clay to purchase marijuana.  Id. at 34–36.

Padilla and DeLee arrived at a house where Minasian had told them that they could purchase marijuana.  Tr. #3 at 37.  Padilla gave $2,500 to Minasian to purchase one-pound of marijuana for her for personal use while she waited in the car with DeLee, then after ten to fifteen minutes, Minasian returned with the marijuana.  Id. at 37–38, 48.  Padilla placed the marijuana in the trunk.  Id. at 39.  Minasian said to Padilla that he was "going to go try and wheel and deal for himself and he'll be right back," and went back to the house.  Id.  In the meantime, Padilla and DeLee waited outside to finish smoking cigarettes.  Id.

After another ten to fifteen minutes, DeLee told Padilla that he did not feel well.  Tr. #3 at 39.  DeLee had cold chills and looked pale.  Id.  Both Padilla and DeLee decided to leave and Padilla asked DeLee to go across the street and see what was taking Minasian so long.

5

Id. at 39–40.  Approximately two minutes after DeLee crossed the street, Padilla heard sirens and the police arrived.  Id. at 41.

The police approached Padilla and asked if she was driving, to which she lied and replied no because she was drinking that night.  Tr. #3 at 41, 53.  She was subsequently brought to the police department.  Id. at 41–42.

### 3.  Verdict and Sentencing

On August 25, 2006, after a jury trial, DeLee was found guilty in Onondaga County Supreme Court of burglary in the first degree, attempted robbery in the second degree, and assault in the second degree.  Tr. #3 at 221–24.  On January 25, 2006, DeLee was sentenced to a determinate term of fifteen years with five years post-release supervision for the count of burglary in the first degree, and a determinate term of seven years with five years of post-release supervision for each of the two remaining counts, to run concurrent. Id. at 237–38.

### B.  Appeals

#### 1.  Pro Se Motion to Vacate the Judgment of Conviction Pursuant to N.Y. Crim. Proc. Law § 440.10

On November 3, 2007, after filing a notice of appeal but before perfecting his direct appeal, (Dkt. No. 17-7 at 5), DeLee filed a pro se motion to vacate the judgment of conviction.  Dkt. No. 17-3.  DeLee contended that he received ineffective assistance of trial counsel because counsel:  (1) engaged in conduct that was so egregious as to be ineffective; (2) failed to read the file and investigate his case; (3) failed to investigate after he

6

was informed by DeLee that the complainants identified other suspects who did not fit DeLee's characteristics; (4) failed to interview any witnesses who were present at the crime scene; (5) failed to file an omnibus motion; (6) failed to effectively advocate on his behalf; (7) failed to make motions to suppress evidence of any out-of-court identifications pursuant to United States v. Wade, 388 U.S. 219 (1967), or to determine whether the police had probable cause to arrest petitioner pursuant to Dunaway v. New York, 442 U.S. 200 (1979); (8) failed to impeach the officers' testimony at the Huntley hearing to determine whether his statement to the police was voluntary;[5] (9) failed to pursue an intoxication defense; (10) failed to obtain certain documents to help him effectively cross-examine and impeach witnesses; (11) failed to request proper jury instructions or object to the court's instructions; (12) failed to move for dismissal of the indictment on the ground of prosecutorial misconduct by presenting perjured testimony during the grand jury and by using improper evidence at trial; (13) had DeLee sign a waiver to allow eleven jurors to decide the case when a juror revealed that he did to feel comfortable continuing to serve after recognizing his brother in the courtroom; and (14) failed to file a timely notice of appeal. Dkt. No. 17-3 at 7–8, 31–32. "In conclusion, [DeLee alleged] that these cumulative errors prejudiced his trial and merit that his conviction be vacated." Dkt. No. 17-7 at 3.

By Decision and Order dated May 22, 2006, the Onondaga County Supreme Court denied DeLee's motion pursuant to N.Y. Crim. Proc. Law § 440.10(2)(b) as procedurally

---

[5] A Huntley hearing is requested to determine the voluntariness of a defendant's confession. Rivera v. Warden, Attica Corr. Facility, 431 F. Supp. 1201, 1204 (E.D.N.Y. 1977) (citing People v. Huntley, 15 N.Y.2d 72 (1965)).

barred "because sufficient facts appear[ed] on the record to allow for appellate review."[6]
Dkt. No. 17-7 at 5.  Assuming the motion to vacate was not procedurally barred, the court
found DeLee's claims to be without merit.  Id.  The court largely found that DeLee received
"meaningful representation at all stages of his [criminal] proceedings," "[c]ounsel was an
effective advocate," and "[c]ounsel was fully prepared at all court appearances and
challenged the credibility of all the complainants and investigating police personnel."  Id.

The court methodically considered each of DeLee's claims.  First, in contravention to a
number of DeLee's claims, the court found that a review of the trial transcript and record
demonstrated defense counsel's preparedness, familiarity with the facts of the case,
effectiveness in using grand jury minutes and police reports in his cross-examinations as
well as requesting discovery demands, zealous advocacy with respect to controverting
complainants' identification of DeLee and DeLee's innocence, requests for proper jury
instructions, and the presentment of a viable defense strategy.  Dkt. No. 17-7 at 5–6, 8.

Next, the court found that defense counsel explored DeLee's intoxicated state at the
time of the crime both in his opening statement and throughout the trial and the fact that
medical records were not introduced at trial was irrelevant because the prosecution did not
contest the point that DeLee was heavily intoxicated.  Dkt. No. 17-7 at 6.  Further, the court

---

[6]  N.Y. CRIM. PROC. LAW § 440.10(2)(b) provides that:

[T]he court must deny a motion to vacate a judgment when:

. . .

(b) The judgment is, at the time of the motion, appealable or
pending on appeal, and sufficient facts appear on the record
with respect to the ground or issue raised upon the motion to
permit adequate review thereof upon such an appeal. . . .

noted that "intoxication is not a defense to any crime, it merely aids to negate specific intent," and DeLee's "intoxication d[id] not render his actions involuntary." Id. at 7 (citing People v. Brown, 57 A.D.2d 869 (2d Dep't 1977)).

The court also found that an identification procedure hearing, or a Wade hearing, was unnecessary because DeLee was arrested at the crime scene and taken into custody.[7] Dkt. No. 17-7 at 6–7. Similarly, the court found that a Dunaway hearing was unnecessary because DeLee's statement after his arrest was not inculpatory.[8] Id. at 7. Further, the court emphasized that defense counsel "is not obligated to make baseless motions" such as requesting a dismissal or alleging prosecutorial misconduct as DeLee alleged. Id. at 8.

Finally, the court found DeLee's claims that defense counsel was ineffective for both having him sign a waiver to allow for only eleven jurors and failing to file a notice of appeal were both procedurally barred as sufficient facts in the record allowed for appellate review. Dkt. No. 17-7 at 8.

## 2. Direct Appeal to the Appellate Division

DeLee retained counsel to appeal his conviction. Dkt. No. 17-12. DeLee argued: (1) the verdict was based on legally insufficient evidence and against the weight of the evidence; (2) prosecutorial misconduct deprived him of a fair trial; (3) ineffective assistance

---

[7] "A Wade hearing is requested when a defendant wishes to contest the defendant's identification proceeding as unduly suggestive." Dkt. No. 17-7 at 6 (citing United States v. Wade, 388 U.S. 218 (1967)).

[8] "A Dunaway hearing is requested when a defendant seeks to challenge the admissibility of his statement obtained after arrest without probable cause." Dkt. No. 17-7 at 7 (citing Dunaway v. New York, 442 U.S. 200 (1979)).

9

of counsel deprived him of his right to a fair trial; and (4) the sentence was harsh and excessive. Id. at 3.

First, DeLee claimed the evidence was not legally sufficient to establish that he was involved in the robbery and the injuries sustained by Stevens did not constitute a "physical injury" for purposes of the charges. Dkt. No. 17-12 at 30–37. Second, DeLee argued that the prosecutor engaged in misconduct by pounding on the jury rail, making faces during defense counsel's summation, and claiming that the medical issue that he encountered when he was arrested was fabricated. Id. at 40. Third, DeLee claimed that he received ineffective assistance of trial counsel because counsel failed to both make motions and conduct an adequate investigation with respect to the issue of intoxication. Id. at 45. Finally, DeLee argued that the sentence was harsh and excessive because DeLee's accomplices received shorter sentences,[9] no substantive discussion of rehabilitation took place with regard to DeLee's drug and alcohol abuse, and the lack of direct evidence pointing to DeLee's involvement. Id. at 48–49.

By Decision and Order dated December 30, 2010, the Appellate Division of the Fourth Judicial Department denied DeLee's appeal. Dkt. No. 17-14 at 2. The appellate panel concluded that: (1) DeLee failed to preserve for review the issue with respect to the insufficiency of the evidence argument since he failed to renew his motion for a trial order of dismissal after presenting the evidence; (2) the verdict was not against the weight of the evidence; (3) DeLee failed to preserve for review the issue with respect to the denial of a fair trial due to prosecutorial misconduct; and (4) the remaining contentions were without merit.

---

[9] Minasian pled guilty and received a ten-year sentence. Dkt. No. 17-12 at 48. The third assailant was apprehended, pled guilty, and received a five-year sentence. Id.

Id.

With the assistance of counsel, DeLee sought leave to appeal to the New York State Court of Appeals ("Court of Appeals"). Dkt. No. 17-15. DeLee raised the same claims that he raised before the Appellate Division except for one portion of the ineffective assistance of counsel claim, as DeLee did not contend that trial counsel was ineffective by failing to make motions. Id. at 3. By certificate dated March 9, 2011, the Court of Appeals denied DeLee's leave to appeal. Dkt. No. 17-17 at 2.

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[10] a federal court may grant habeas review only if state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). When evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and

---

[10] Respondent conceded that DeLee's original petition dated May 19, 2011, was timely filed pursuant to the one-year statute of limitation under the AEDPA, which applies to all state convictions that became final after April 24, 1996. Dkt. Nos. 1 at 7, 17 at 18. Under the AEDPA, a judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court. See Williams v. Artuz, 237 F.3d 147, 150–51 (2d Cir.), cert. denied, 534 U.S. 924 (2001). DeLee's conviction became final on June 7, 2011, ninety days following March 9, 2011 when the Court of Appeals denied his leave to appeal. Dkt. No. 17-17. Thus, DeLee had until June 7, 2012 to file his petition for a writ of habeas corpus, which he did within the appropriate time period.

convincing evidence." 28 U.S.C. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal court may review the habeas petition if the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 409.

### III.  Exhaustion

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies.  28 U.S.C. § 2254(b), (c); Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir. 2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001)).  The petitioner must have "given the state courts a fair opportunity to pass upon his federal claim." Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982).  The petitioner may alert the state court to his federal claim by citing the Constitution, relying on federal case law, relying on state cases employing constitutional analysis to a similar fact pattern, stating the claims in a specific way as to contemplate a constitutional provision, or presenting a fact pattern that is common in constitutional litigation.  Id. at 194.

## A. Ineffective Assistance of Trial Counsel

DeLee contends that he received ineffective assistance of trial counsel because counsel: (1) failed to file any pre-trial motions, specifically, a demand for discovery and inspection of grand jury minutes; (2) misrepresented the facts in his opening statement; (3) failed to renew a motion to dismiss after presenting defense's case; (4) failed to file any motions to set aside the verdict on the ground that there was insufficient evidence to establish that he participated in the crime; (5) failed to make contemporaneous objections to the prosecutor's remarks during defense counsel's summation; (6) failed to object when the prosecution introduced into evidence or elicited testimony about a mask, flashlight, gloves, and a baseball cap that had no nexus to him; (7) failed to impeach witnesses who suborned perjury; (8) failed to take exception to the court's ruling that petitioner's statement that he was in the area to purchase marijuana could not be introduced during defense counsel's cross-examination of Timmerman; (9) failed to introduce medical records regarding his intoxication; and (10) failed to introduce mitigating evidence by expert witnesses. However, of these ten issues, DeLee only raised (1), (3), (4), and (9) in his direct appeal to the Appellate Division. Further, in his application for leave application to the Court of Appeals, DeLee only raised the intoxication issue under the ineffective assistance of counsel claim. Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had. <u>Daye</u>, 696 F.2d at 190 n.3. Because DeLee failed to successfully present the majority of these issues to the highest state court which may have rendered a decision, DeLee's ineffective assistance claim is only exhausted with respect to the intoxication issue. All other issues under the ineffective assistance claim are unexhausted.

## B. Legal Sufficiency and Weight of the Evidence

To the extent that DeLee alleged legal sufficiency and weight of the evidence claims, he has only partially exhausted such claims.[11] DeLee contends that the evidence was legally insufficient to establish that he was involved in the robbery. He also contends that the verdict was against the weight of the evidence. DeLee raised both claims in his applications to the Appellate Division and the Court of Appeals. Nevertheless, the legal sufficiency claim is procedurally barred from federal habeas review because of adequate and independent state law grounds.

Federal habeas review of a state-court conviction is prohibited if a state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991) (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also Harris v. Reed, 489 U.S. 255, 261–62 (1989); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." Coleman, 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional; thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from

---

[11]  DeLee's amended petition does not artfully articulate and separate the legal sufficiency and weight of the evidence claims from the ineffective assistance of counsel claim. However, because such claims can be inferred from the amended petition, and respondent acknowledged them in his memorandum of law, they are addressed in this Report-Recommendation.

14

considering the merits of the federal claim in a habeas petition.  <u>Harris</u>, 489 U.S. at 264 n.10.

New York statutory law provides,

> At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . . [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

N.Y. Crim. Proc. L. § 330.30(1).  Under this standard, "an insufficiency [of the evidence] argument may not be addressed unless it has been properly preserved for review during the trial."  <u>People v. Hines</u>, 97 N.Y.2d 56, 61 (2001) (citation omitted).  For purposes of preserving a question of law on appeal, a party must either make an objection at trial or the trial court makes an express ruling on a specific question.  N.Y. Crim. Proc. Law § 470.05(2); <u>Garvey v. Duncan</u>, 485 F.3d 709, 714 (2d Cir. 2007); <u>People v. Payne</u>, 3 N.Y.3d 266, 274 (2004).  However, the presentation of a defense by way of evidence at a defendant's trial effectively waives any sufficiency of the evidence claim for appellate review and nullifies a prior motion for a trial order of dismissal.  <u>Swail v. Hunt</u>, 742 F. Supp. 2d 352, 360 (W.D.N.Y. 2010) (collecting cases).  As only a "firmly established and regularly followed state practice . . . can prevent implementation of federal constitutional rights," <u>James v. Kentucky</u>, 466 U.S. 341, 348–49 (1984), the Second Circuit has recognized that this New York procedural rule, § 470.05(2), is established and regularly followed by state courts.  <u>Garvey</u>, 485 F.3d at 716.

In this case, the Appellate Division held that DeLee failed to preserve for appellate review his legal sufficiency claim because "he failed to renew his motion for a trial order of dismissal after presenting evidence."  Dkt. No. 17-14 at 2.  As there was no additional

motion for a trial order of dismissal made after the defense rested, any claim that DeLee had regarding the legal sufficiency of the evidence was not properly preserved for appellate review. Because this claim was denied review based on an adequate and independent state ground, it is procedurally barred, and thus, procedurally defaulted from federal habeas review.

A claim that is procedurally defaulted due to an adequate and independent state law ground may avoid the procedural bar if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted); Ramirez v. Attorney Gen. of New York, 280 F.3d 87, 94 (2d Cir. 2001). "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. Levine, 44 F.3d at 127 (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003).

Here, DeLee neither provides support showing cause for the default and actual prejudice nor his actual innocence. "Ineffective assistance of counsel can constitute 'cause' . . . only if it amounts to truly deficient representation as measured by Federal constitutional standards, and if the claim of ineffective assistance has been separately exhausted in the state courts." Swail, 742 F. Supp. 2d at 360. As discussed supra, only the intoxication issue under the ineffective assistance claim was exhausted in the state courts and as will be discussed infra,

16

defense counsel's representation was not truly deficient as measured by federal constitutional standards. Further, DeLee does not present any support or new evidence tending to show that he was innocent of the crimes charged against him.[12] Therefore, DeLee's amended petition on the legal sufficiency claim is in fact procedurally barred by an adequate and independent state law ground. See Mills v. Poole, No. 06-CV-00842A, 2008 WL 2699394, at *11 (W.D.N.Y. June 30, 2008) (finding a legal sufficiency claim procedurally barred under the adequate and independent state ground doctrine because petitioner failed to renew his motion after having presented evidence).[13] As such, this Court is precluded from considering the merits of the claim in the habeas petition. Accordingly, it is recommended that DeLee's amended petition on this ground be denied as procedurally barred.

As for the weight of the evidence claim, the Appellate Division, "viewing the evidence in light of the elements of the crimes as charged to the jury, concluded that the verdict was not against the weight of the evidence. Dkt. No.17-14 at 2. Because DeLee then raised this issue in his application to the Court of Appeals, this claim is exhausted.

## C. Prosecutorial Misconduct

DeLee contends that the prosecutor engaged in misconduct because: (1) he denigrated

---

[12] In his traverse, DeLee merely reiterated that he had repeatedly "expressed his 'innocence'" and how the court instead gave credit to the officers' testimonies. Dkt. No. 20 at 5–6.

[13] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

the defense and vouched for the credibility of the prosecution's witnesses during summation; (2) he introduced into evidence, or elicited testimony about a mask, flashlight, gloves, and a baseball cap that had no nexus to DeLee; (3) the police never tested the evidence seized; (4) he presented false police testimony that DeLee was wearing a mask and that the living room was well lit; and (5) he withheld exculpatory material from the grand jury that DeLee was not wearing a mask when Passino arrested him. While DeLee raised prosecutorial misconduct as a claim in his application to the Appellate Division, none of the issues alleged in his amended petition were in that application. Thus, DeLee's amended petition on this ground is unexhausted.

### D. Breach of Judicial Powers and Fair Trial

While respondent did not discuss DeLee's breach of judicial powers in detail, this claim is nevertheless unexhausted. DeLee contends that the trial court's failure to correct the prosecutor's misconduct when perjury was committed amounted to a breach of judicial powers. However, this claim was never raised in DeLee's applications to the Appellate Division or the Court of Appeals. Therefore, DeLee's amended petition on this ground is unexhausted.

Finally, DeLee contends that he was deprived of a fair trial due to the cumulative errors created by his ineffective assistance of trial counsel, prosecutorial misconduct, and the trial court's failure to take corrective action when the prosecutor presented perjured testimony. Similar to the claim above, DeLee failed to exhaust this claim because he did not assert that "cumulative errors" deprived him of a fair trial in his applications to the Appellate Division or

the Court of Appeals.  Therefore, DeLee's amended petition on this ground is also unexhausted.

## IV.  Merits

While failure to exhaust claims generally prohibits a habeas court from evaluating a claim on the merits, an unexhausted claim is deemed exhausted when there is no alternative means to exhaust that claim.  See Castille v. Peoples, 489 U.S. 346, 351 (1989); Aparicio, 269 F.3d at 90.  The lack of a state court forum to exhaust the claim results in "procedural default."  See generally Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) (citations and emphasis omitted) ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'").

Even though certain of DeLee's claims are unexhausted and he is in procedural default, the AEDPA allows the writ to be "denied on the merits, notwithstanding the failure . . . to exhaust . . . ." 28 U.S.C. § 2254(b)(2).  Thus, although the amended habeas petition includes both exhausted and unexhausted claims, this Court may still review the merits of these claims.

### A.  Ineffective Assistance of Counsel

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). To prevail on this claim, petitioner must satisfy a two-prong test showing that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" requires petitioner to show that counsel's performance "fell below an objective standard of reasonableness." Murden v. Artuz, 497 F.3d 178, 198 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 688). "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. Premo v. Moore, __ U.S. __, 131 S. Ct. 733, 740 (2011) (collecting cases). A federal habeas court must not equate unreasonableness under Strickland with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable . . . [but it is] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

For numerous reasons, outlined below, DeLee has failed to establish that the state courts had unreasonably applied Federal precedents. DeLee's claim that counsel was ineffective for failing to file any pre-trial motions, specifically, as a demand for discovery and

inspection of grand jury minutes, is without merit.  DeLee does not allege why such motions

"would have been arguably meritorious."  Rollins v. Beard, No. 04-CV-2544, 2008 WL

2719577, at *6 (E.D. Pa. July 11, 2008) (rejecting petitioner's ineffective assistance of

counsel claim based on failure to file pre-trial motions where petitioner offered no

information that if the motions were filed, they "would have produced some other desired

result, or that [petitioner's] case was prejudiced in the absence of any of these motions").

While counsel did not file an omnibus motion, a Huntley hearing was conducted to

determine the admissibility of DeLee's statements.[14]  Tr. #1 at 1–84.  Further, counsel

obtained copies of Timmerman's report prior to the Huntley hearing.  Id. at 38.  Thus, absent

the filing of pre-trial motions, the record shows that discovery was conducted.  Moreover,

any prejudice to DeLee was negated by the § 440 court's finding that defense counsel was

provided all discovery material upon defense counsel's request, including Rosario and Brady

materials, and defense counsel used discovery materials to cross-examine witnesses.[15]  Dkt.

No. 17-7 at 6; Tr. #2 at 296–97.  As such, DeLee has failed to show that the counsel's failure

to file pre-trial motions fell below the objective standard of reasonableness and the verdict

would have been different if such motions were filed.

Similarly, DeLee's allegation based on counsel's failure to inspect grand jury minutes is

---

[14]  An "omnibus motion" is "designed to prevent multiple motions raising grounds in a fragmented fashion that could have been combined in a single set of motion papers filed and brought on at the same time and heard by the same judge."  PETER PREISER, PRACTICE COMMENTARIES, N.Y. CRIM. PROC. LAW § 255.10 (McKinney 2012).

[15]  Rosario materials refer to prior statements of witnesses who will testify at trial while Brady materials refer to exculpatory evidence that is material to the guilt or innocence of a defendant.  See Brady v. Maryland, 373 U.S. 83 (1963); People v. Rosario, 9 N.Y.2d 286 (1961).

without merit.  DeLee filed a pro se motion to suppress all evidence and dismiss that

indictment, arguing specifically that the evidence before the grand jury was legally

insufficient to support an indictment.  Dkt. No. 17-1 at 79.  Based on a review of the grand

jury minutes, the court determined that the grand jury evidence was sufficient to support an

indictment.  Tr. #1 at 93–94.  Moreover, any alleged error in the grand jury proceedings was

cured by the petit jury's verdict finding DeLee guilty beyond a reasonable doubt.  Lopez v.

Riley, 865 F.2d 30, 32 (2d Cir. 1989) (citing United States v. Mechanik, 475 U.S. 66, 70

(1986)).  Thus, DeLee's amended petition on this issue is without merit.

Second, DeLee contends that counsel misrepresented the facts in his opening

statement.  However, DeLee neither specified which facts counsel had misrepresented nor

how such alleged misrepresentation actually prejudiced him at trial.  Counsel stated in his

opening statement that DeLee was not involved in the crimes alleged but was only present

at the crime scene to purchase marijuana and indeed, a bag of marijuana was recovered by

the police.  Tr. #2 at 122–23, 126.  Counsel brought to the jury's attention that the police saw

two men fleeing the crime scene wearing masks but DeLee did not wear a mask when he

was apprehended outside the house.  Id. at 123.  Despite DeLee's conclusory allegations,

DeLee has failed to provide record support for this aspect of his amended petition.  White v.

Herbert, No. 02-CV-0439 (NPM), 2006 WL 3728878, *4 (N.D.N.Y. Dec. 15, 2006) (collecting

cases on the dismissal of petitions containing only vague or conclusory allegations).  Thus,

DeLee's amended petition on this issue is also without merit.

Third, DeLee's contention that counsel failed to renew his motion to dismiss at the

conclusion of the defense's case is without merit.  DeLee does not show that a renewed

motion would have resulted in a different trial result.  See Rollins, 2008 WL 2719577, at *6.

Further, DeLee has not established that as a result of the failure to renew, he was deprived

of a fair trial.  Thus, DeLee's amended petition on this issue is without merit.

Fourth, DeLee contends that counsel was ineffective by failing to file a motion to set

aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30 due to insufficient evidence to

establish that he participated in the crime.  As previously discussed, to present a legal

sufficiency argument pursuant to § 330.30, it must be properly preserved for review during

trial by renewing the motion to dismiss at the close of all the evidence.  Hines, 97 N.Y.3d at

61–62.  Since this issue was not properly preserved, defense counsel was barred from

making a motion to set aside the jury's verdict.  Further, defense counsel is not obligated to

make legally and factually baseless motions.  See United States v. Kirsh, 54 F.3d 1062,

1071 (2d Cir. 1995) (denying ineffective assistance claim in part because motions not

pursued by counsel were without merit).  An attorney's refusal to make such a motion does

not render his or her representation ineffective.  Moreover, DeLee does not suggest any

"possible bases on which trial counsel could have moved to set aside the verdict."

Montgomery v. Wood, 727 F. Supp. 2d 171, 189 (W.D.N.Y. 2010).  Thus, DeLee's amended

petition on this issue is without merit.

Fifth, DeLee contends that counsel was ineffective because he failed to make

contemporaneous objections to the prosecutor's remarks during defense counsel's

summation.  Again, DeLee does not specify which remarks defense counsel ought to have

objected to.  Prosecution remarked that defense counsel's argument with respect to whether

one of the man who fled the house was not wearing a mask was "a line of malark[e]y."  Tr.

#3 at 154.  After prosecution concluded his summation, defense counsel objected to this remark and moved for a mistrial on the ground that the prosecutor denigrated the defense with that remark.  Id. at 166–67.  The court denied counsel's application because it was untimely made.  Id. at 167.  However, defense counsel's decision to object at a later time can be a tactical decision because a contemporaneous objection may bring attention to the prosecution's argument that Shaver could have seen DeLee wearing a hooded sweatshirt and not a mask.  Resp't Mem. of Law at 46; see Gatto v. Hoke, 809 F. Supp. 1030, 1039 (E.D.N.Y. 1992) (reasoning that "counsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statement so as to draw the jury's attention to them.").  Thus, DeLee's amended petition on this issue is without merit.

Sixth, DeLee contends that counsel failed to object when the prosecution introduced in evidence a mask, flashlight, gloves, and a baseball cap that had no nexus to him.  "As a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation."  United States v. Gaskin, 364 F.3d 438, 468 (2004) (citations omitted).  Here, it is undisputed that Minasian wore a mask during the crimes alleged and that the police recovered a flashlight, gloves, and baseball cap outside K. Males's house.  It is also undisputed that defense counsel elicited testimony from Timmerman that he never saw DeLee in connection with the flashlight, gloves, nor a baseball cap.  Tr. #2 at 283.  Thus, it cannot be said that defense counsel's performance fell below an objective standard of reasonableness or had defense counsel objected to the evidence, there was a reasonable probability that a different outcome would have resulted.  Accordingly, DeLee's amended

petition on this issue lacks merit.

Seventh, DeLee contends that counsel failed to impeach witnesses who suborned perjury. DeLee failed to specify which witness suborned perjury and what was allegedly perjurious. Despite DeLee's conclusory allegation, there is nothing in the record that supports this claim. White, 2006 WL 3728878, at *4. Thus, DeLee's amended petition on this issue is also without merit.

Eight, DeLee's contends that counsel failed to take exception to the court's ruling of his statement that he was in the area to purchase marijuana could not be introduced during defense counsel's cross-examination of Timmerman. Defense counsel attempted to elicit DeLee's statement concerning the reason for his presence at the crime scene. Tr. #2 at 250. Prosecution objected and defense argued that the statement should come in as a statement against his penal interest. Id. at 251–52. On this objection, the trial court ruled that the statement was self-serving and inadmissible through a third party. Id. at 252–54. Even though counsel was prevented from introducing the contents of DeLee's statement, he elicited testimony that after the police spoke with DeLee, a pound of marijuana was recovered from a car associated with DeLee. Id. at 263; see Ware v. New York, 412 F. Supp. 2d 236, 248 (W.D.N.Y. 2005) ("In sum, Ware's unsubstantiated assertions of attorney error do not provide a basis for Federal habeas relief."). Thus, DeLee's amended petition on this issue is without merit.

Lastly, DeLee's contention that counsel failed to introduce medical records and mitigating evidence by expert witnesses regarding his intoxication cannot stand. Even if defense counsel pursued an intoxication defense by introducing the medical records,

intoxication is not a complete affirmative defense but merely reduces the gravity of the offense by negating an element of the crime charged. N.Y. Penal Law § 15.25 (McKinney 2012).[16] As explained by the state court, defense counsel elicited evidence of DeLee's intoxication at the time of the crime, which the jury did not find credible. Unsuccessful trial strategy does not amount to an ineffective assistance of counsel. Zeito v. Girdich, 431 F. Supp. 2d 329, 334 (W.D.N.Y. 2006) (citing Strickland, 466 U.S. at 689). The state court properly applied Federal precedents. Thus, DeLee's amended petition on this issue is also without merit.

Accordingly, DeLee's amended petition on this ground should be denied.


## B. Legal Sufficiency and Weight of the Evidence

In seeking habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000). "[T]he critical inquiry on the review of the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). The reviewing court

---

[16] "Intoxication is not . . . a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged." N.Y. PENAL LAW § 15.25 (McKinney 2012).

defers to the jury's determination as to the weight of the evidence and the credibility of the witnesses. United States v. Velasquez, 271 F.3d 364, 370 (2d. Cir 2001).

In considering the sufficiency of the evidence on a state conviction, the federal court must first examine state law to determine the elements of the crime. Fama, 235 F.3d at 811. DeLee was convicted of burglary in the first degree, attempted robbery in the second degree, and assault in the second degree. Under New York law, to find a defendant guilty of burglary in the first degree, the prosecution must prove that the defendant "knowingly enter[ed] or remain[ed] unlawfully in a dwelling with the intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime . . . [c]ause[d] physical injury to any person who was not a participant in the crime . . . ."[17] N.Y. Penal Law § 140.30(2) (McKinney 2012). To find a defendant guilty of attempted robbery in the second degree, the prosecution must prove that the defendant "engage[d] in conduct which tends to effect the commission of the crime" of "forcibly steal[ing] property, and when, . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [c]ause[d] physical injury to any person who [wa]s not a participant in the crime." N.Y. Penal Law §§ 110, 160.10(2)(a) (McKinney 2012). A person steals property when, with the intent to deprive another person of property, he wrongfully takes that property. N.Y. Penal Law § 155.00(1), (2) (McKinney 2012). Finally, to establish that a defendant was guilty of assault in the

---

[17] A "dwelling" is "a building which usually occupied by a person for lodging therein at night." N.Y. PENAL LAW § 140.00(3) (McKinney 2012). A person "'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." N.Y. PENAL LAW § 140.00(5) (McKinney 2012). DeLee does not contest that K. Males's house is a dwelling nor does he contest K. Males's testimony that she did not provide permission to any one to enter her home in the morning of February 2, 2006.

second degree, the prosecution must establish that defendant, "[i]n the course of and in furtherance of the commission or attempted commission of a felony, . . . or of immediate flight therefrom, he, or another participant . . . cause[d] physical injury to a person other than one of the participants . . . ." N.Y. Penal Law § 120.05(6) (McKinney 2012).

In this case, viewing the evidence in light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes charged against DeLee beyond a reasonable doubt. The prosecution established through M. Males's testimony that three men entered K. Males's house without permission. Two men went upstairs in search of Stevens while one man held down M. Males and threatened to kill her if he did not find what he was looking for. When the police arrived at the crime scene, they saw that two men were fleeing the house, one of whom was identified as DeLee. Further, the police recovered objects outside the house that witnesses testified were associated with the three house intruders. Thus, the record supports the finding that DeLee knowingly and unlawfully entered and remained in a dwelling and had the intent to commit a crime in that dwelling, specifically, acquiring either money or drugs. Further, one of the assailants struck Stevens, a non-participant of the crime, who suffered a large welt on his cheek that required icing and pain medication. Moreover, the jury saw a photograph of the welt. Tr. #2 at 318–19. Therefore, the record evidence reasonably supports a finding of guilt beyond a reasonable doubt for the crime of burglary in the first degree.

Second, a rational trier of fact could have found the essential elements of attempted robbery in the second degree charged against DeLee beyond a reasonable doubt. The record shows that DeLee engaged in conduct which tends to effect the commission of the

crime when he entered and remained in K. Males's house, physically and verbally threatening M. Males's life in exchange for certain property within the house. Two of the men also threatened and attacked Stevens while in search for money and marijuana in the house. During the course of this crime, Stevens was injured. Therefore, the record evidence reasonably supports a finding of guilt beyond a reasonable doubt for the crime of attempted robbery in the second degree.

Finally, the record also supports the verdict of guilty of assault in the second degree. The record shows that DeLee and two other men were in the course of committing burglary, a felony,[18] and Stevens was injured during the commission of said felony. Therefore, the record evidence reasonably supports a finding of guilt beyond a reasonable doubt for the crime of assault in the second degree.

To the extent that DeLee raises a claim that the verdict was against the weight of the evidence, this claim must fail as a matter of law based on its merits. It is well-settled law that a weight of the evidence claim is not cognizable on federal habeas review. <u>Jackson v. Heath</u>, No. 10-CV-3449 (RJS) (AJP), 2010 WL 3075557, at *12 (S.D.N.Y. Aug. 6, 2010) (internal quotation marks omitted) (citing cases). Under New York statutory law, an appellate court may reverse or modify a verdict of conviction that resulted in whole or in part against the weight of the evidence. N.Y. Crim. Proc. Law § 470.15(5) (McKinney 2012). Thus, "[t]he weight of the evidence claim is a pure state law claim grounded in New York Criminal Procedure Law . . . ." <u>Jackson</u>, 2010 WL 3075557, at *12 (citing cases) (internal

---

[18] "Burglary in the first degree is a class B felony." N.Y. PENAL LAW § 140.30 (McKinney 2012).

quotation marks omitted).

Accordingly, DeLee's amended petition on this ground should be denied.


### C. Prosecutorial Misconduct & Breach of Judicial Powers

"The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, not the broad exercise of supervisory power." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (internal quotation marks omitted) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). The question before a federal habeas court is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Id. (citations omitted).

DeLee first contends that the prosecutor engaged in misconduct because he denigrated the defense and vouched for the credibility of the prosecution's witnesses during summation. To establish substantial prejudice where the prosecutor's summation is challenged, the Court considers a three-factor test: "[(1)] the severity of the misconduct; [(2)] the measures adopted to cure the misconduct; and [(3)] the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (citing United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam), cert. denied, 456 U.S. 989 (1982)). "[S]tatements during summation are not improper if they constitute a fair comment on the evidence at trial or a fair response to remarks made by the defense counsel during summation." See Francis v. Conway, No. 09-CV-3391 (BMC), 2010 WL 23327, at *7 (E.D.N.Y. Jan. 5, 2010) (collecting cases) (internal quotation marks omitted). Here, during summation, the prosecution fairly responded to the defense's argument concerning Timmerman's testimony that Timmerman

could have merely assumed that a photograph of a boot print on a door looked the same as a photograph of a boot print outside the broken window. Tr. #3 at 147. The prosecution noted how Padilla's testimony, that she gave Minasian $2,500 but did not go with him to purchase the marijuana, was illogical. Id. at 141. Further, the prosecution responded to how Stevens did not identify the men who attacked him because he was occupied with trying to survive the situation. Id. at 148–49. Such responses are fair comments to the defense's summation. Assuming DeLee claimed that the prosecution's "a line of malark[e]y" constituted misconduct, in light of the prosecution's other comments that were fairly made in response to the defense's arguments, that remark was not so severe as to result in an unfair trial.

DeLee's contention that the prosecution had introduced into evidence, or elicited testimony about, a mask, flashlight, gloves, and a baseball cap that had no nexus to DeLee is mistaken. In New York, all relevant evidence is generally admissible unless its admission violates some exclusionary rule. People v. Scarola, 71 N.Y.2d 769, 777 (1988) (citations omitted). Evidence is relevant if it tends to prove the existence of any material fact. Id. A trial court may, in its discretion, exclude relevant evidence if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury. Id. Here, considering how multiple witnesses testified that the assailants wore gloves and concealed their faces with masks during the course of the criminal conduct, and that the items introduced by the prosecution were found in close proximity to the burglarized residence, the prosecution's introduction of such relevant evidence did not constitute misconduct. Similarly, the prosecutor did not engage in misconduct by not having the police test the evidence seized. The Constitution does not obligate the prosecution to test their

31

evidence.  See Arizona v. Youngblood, 488 U.S. 51, 58–59 (1988) (emphasizing that the police does not have a constitutional duty to use a particular investigatory tool).  Thus, there is no prosecutorial misconduct stemming from the failure to test certain evidence seized.

DeLee contends that the prosecutor presented perjured testimony that DeLee was wearing a mask and that the living room was well lit.  "[M]inor inconsistencies in descriptive testimony, where several witnesses testify to their varying estimates of height, weight, age, time, and to their recollected observation of wearing apparel, color, mustaches, haircuts, etc., are a hallmark of truth, since it is virtually impossible to see and recall all personal features exactly the same . . . ." United States v. Deloach, 530 F.2d 990, 997 (D.C. Cir. 1975), cert. denied, 426 U.S. 909 (1976).  First, Shaver testified that the two men he encountered in K. Males's living room wore masks.  Passino testified that he did not see any masks when he saw two men flee the house.  Walker testified that he recalled seeing two men who ran by the side of the house wearing masks.  Although the officers offered varying testimonies with respect to whether they saw two men with masks at the crime scene, they all agreed that DeLee and Minasian were the two men apprehended after the foot-pursuit. Thus, such minor inconsistencies in descriptive testimony do not render the prosecution's line of questioning a presentation of false testimony.

Second, Shaver testified that when he entered the living room to the house, the light in the room was already on and still lit.  Tr. #2 at 193.  On the other hand, M. Males testified that the police officers turned on the light in the living room when they arrived at the house but there was light coming from the television.  Id. at 149.  Even though there was a discrepancy between these two testimonies, the record does not contain other facts

supporting the contention that Shaver's testimony was false.

DeLee's contention that the prosecutor engaged in misconduct because he withheld exculpatory material from the grand jury that DeLee was not wearing a mask when Passino arrested him is without merit. This is because "the petit jury's subsequent guilty verdict means . . . any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986); Lopez, 865 F.2d at 32.

DeLee also contends that the trial court breached its judicial powers by not correcting the prosecution's presentment of perjured testimony. However, as discussed supra, because the prosecution did not engage in misconduct by presenting perjured testimony, it follows that the trial court did not breach its judicial powers by not taking corrective action.

Accordingly, DeLee's amended petition on this ground should be denied.

### D. Fair Trial

DeLee contends that he was deprived of a fair trial due to cumulative errors created by ineffective counsel, breach of judicial powers, and prosecutorial misconduct. "In limited circumstances, cumulative errors may "serve as the basis for habeas corpus relief." Brumfield v. Stinson, 297 F. Supp. 2d 607, 621 (W.D.N.Y. 2003) (citation omitted). In order for a federal habeas court to find that cumulative errors justify habeas relief, "the alleged individual errors a petitioner seeks to aggregate [must be actual] errors." Id. (citing Joyner v. Miller, No. 01-CV-2157 (WHP) (DF), 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002) (collecting cases)). Further, the petitioner must show that the errors are "'so prejudicial that

they rendered petitioner's trial . . . fundamentally unfair.'" <u>Id.</u> (citation omitted). In this case, as discussed <u>supra</u>, none of the alleged errors were actually errors. Further, the record is devoid of any evidence amounting to a single error justifying reversal, nor an cumulation of errors that would render DeLee's trial fundamentally unfair. Accordingly, DeLee's amended petition on this ground should be denied.

## V. Conclusion

For the reasons stated above, it is hereby:

1.      **RECOMMENDED** that DeLee's amended petition for a writ of habeas corpus (Dkt. No. 5) be **DENIED**; AND

2.      Furthermore **RECOMMENDED** that no certificate of appealability should be issued with respect to any of DeLee's claims as DeLee has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). <u>See</u> 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); <u>see</u> <u>also</u> <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  December 20, 2012
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge