**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――――――

**MAURICE DELEE,**

                                                    **Petitioner,**

            **vs.**                                                    **9:11-CV-653**
                                                                              **(MAD/CFH)**

**HAROLD GRAHAM,**

                                                    **Respondent.**

―――――――――――――――――――――――――――――――――

**APPEARANCES:**                            **OF COUNSEL:**

**MAURICE DELEE**
**07-b-0369**
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Petitioner *pro se*

**HON. ERIC T. SCHNEIDERMAN**            **THOMAS B. LITSKY, ESQ.**
Attorney General for the                            Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 13, 2011, Petitioner *pro se* commenced this proceeding pursuant to 28 U.S.C. §

2254, claiming that his state-court conviction was the product of various constitutional violations.

*See* Dkt. No. 1.  In his petition, Petitioner sets forth numerous grounds for relief, including

sufficiency of the evidence, ineffective assistance of trial counsel, and a "breach of judicial

powers."  *See* Dkt. No. 5 at 4-5.

In the petition currently before the Court, Petitioner argues that he is entitled to habeas relief because (1) the evidence was legally insufficient to establish guilt and the verdict was against the weight of the evidence; (2) the prosecution engaged in misconduct during the course of his criminal trial; (3) Petitioner's trial counsel provided ineffective assistance; (4) a "breach of judicial powers" resulted when the trial court failed to "correct [the] prosecutorial misconduct when perjury was committed"; and (5) cumulative errors created by ineffective counsel, prosecutorial misconduct, and breach of the judicial powers deprived Petitioner of a fair trial. *See* Dkt. No. 6 at 4-5.

Currently before the Court is Petitioner's petition for a writ of habeas corpus.

## II. BACKGROUND

### A.     The Prosecution's Case

On February 2, 2006, Melissa Males ("M. Males") was living with her mother, Karen Males ("K. Males"), along with a boarder, Michael Stevens ("Stevens"), in Clay, New York. *See* Dkt. No. 17-19 at 128-29. In the early morning hours, at approximately 3:30 a.m., while watching a movie with a friend, Jennifer Demaio ("Demaio"), M. Males observed her house door being kicked in and three men entering the residence. *See id.* at 129-30. M. Males described all three men as dark-skinned with dark clothing. She noted that one of the men wore a mask, whereas the other two were unmasked with hooded sweatshirts and black leather gloves. *See id.* at 133-34, 326-27.

Upon entering the house, one of the unmasked men held M. Males down and threatened to kill her if he did not "find the stuff." *Id.* at 155. Meanwhile, the other two men — one of them masked — went upstairs and discovered Stevens. *See id.* at 326-27. After inquiring about the

2

location of the money and marijuana, one of the men struck Stevens in the head several times and attempted to restrain him with headphone cords. *See id.* at 309-11. As a result, Stevens sustained a welt on his cheek that he remedied with ice and pain medication. *See id.* at 338-39.

Although Demaio was in the restroom at the time of the break-in, she heard the door being kicked and M. Males' scream. *See id.* at 165-66. Demaio called 911 and yelled out for K. Males, who was asleep at the time. *See id.* at 166-67. Awakened by the commotion, K. Males left her bedroom. *See id.* at 366. The man wearing a mask then saw K. Males, accosted her, and led her down the stairs. *See id.* at 168-69, 171, 366. Demaio saw K. Males being led down the stairs and recognized the masked perpetrator as Anthony Minasian. *See id.* At this time, Minasian saw Demaio and pushed her into the bathroom after pulling the phone cord from the wall. *See id.* at 170.

In response to the 911 call, Police Officer Shaver arrived at the house. *See id.* at 191-93. Upon his arrival, he observed two men dressed in dark clothing and face masks and ordered them to get down on the floor. *See id.* at 202. Disregarding Shaver's order, the men fled through a side door of the house. *See id.* at 193-94. Officer Walker and Deputy Sheriff Passino arrived on the scene and saw the two men running away; Walker claims to have seen them in masks, however Passino did not. *See id.* at 286-88, 356. All three officers pursued the men on foot and eventually stopped men later identified as Petitioner and Minasian. *See id.* at 287-88, 292, 356-57, 366. Meanwhile, the third suspect had fled the scene by jumping out of one of the home's windows, resulting in a loud crash and breaking glass, which was overheard by Shaker during the foot pursuit. *See id.* at 197, 313.

Petitioner and Minasian were apprehended by the officers during the foot pursuit and about to be taken into custody, however, an ambulance was needed at the scene for DeLee, who

was laying and flailing on the ground. *See id.* at 291, 300. Officer Passino observed two women, Anna Padilla ("Padilla") and Christine Anson ("Anson"), outside the Males' residence and interviewed each one in turn after the stories they originally gave to him "didn't make any sense." *See id.* 350-52. Before she entered his car for interrogation, Officer Passino confiscated Padilla's purse for safety reasons and observed DeLee's driver's license in plain view at the top of the open bag. *See id.* at 353. At that time, the police confiscated two vehicles associated with Padilla and Anson. *See id.* at 2301-31. Police discovered a bag of marijuana in Padilla's car and a box cutter and knife in her purse. *See id.*

## B. The Defense's Case

On February 1. 2006, Padilla and Petitioner — childhood friends who began dating a year prior to the incident — went out for dinner and alcoholic drinks until around two in the morning. *See* Dkt. No. 17-20 at 30. The couple met up with Minasian to travel to Clay in order to purchase marijuana. *See id.* at 34-36. Padilla gave Minasian $2,500 to purchase one pound for her personal use after they arrived at the Males' house — which Minasian indicated was the purchase point. *See id.* at 37-38, 48. Padilla and Petitioner waited in the car outside the house for about fifteen minutes, at which point Minasian returned with the marijuana. *See id.* Padilla put the recently purchased marijuana in the trunk and smoked cigarettes with Petitioner while they waited for Minasian who claimed he was "going to try and wheel and deal for himself," but would be right back. *See id.* at 39.

After ten to fifteen minutes had passed, Petitioner expressed that he was not feeling well, and both him and Padilla decided it was time to leave. *See id.* Padilla asked Petitioner, who she said looked pale and had cold chills, to check on Minasian across the street. *See id.* at 39-40.

Approximately two minutes after crossing the street, Padilla heard sirens and the police arrived at the scene. *See id.* at 41. When an officer approached Padilla to ask if she was driving, she lied and said no because of the alcoholic drinks, and she was subsequently brought into the police department. *See id.* at 41-42, 53.

## C.    Verdict and Sentencing

Petitioner's state custody arises from a judgment of conviction entered on August 25, 2006, in New York State Supreme Court, Onondaga County, convicting him after a jury trial of burglary in the first degree, attempted robbery in the second degree, and assault in the second degree. *See* Dkt. No. 5 at ¶¶ 1-2, 4-6; *see also* Dkt. No. 17-7 at 2. The state court sentenced Petitioner to a determinate term of fifteen years with five years post-release supervision on the first degree burglary count, and a determinate term of seven years with five years of post-release supervision for each of the two remaining counts, to run concurrently. *See* Dkt. No. 17-7 at 2; *see also* Dkt. No. 17-20 at 237-38.

## D.    Petitioner's direct appeal

Petitioner's attorney on direct appeal argued to the Appellate Division, Fourth Department, that (1) the verdict was not supported by legally sufficient evidence and that the conviction was contrary to the weigh of the evidence; (2) prosecutorial misconduct — including pounding the jury rail and making faces — deprived him of a fair trial; (3) ineffective assistance of counsel deprived him of his right to a fair trial because counsel failed to make motions and thoroughly investigate the intoxication issue; and (4) the sentence was harsh and excessive because his

alleged accomplices received shorter sentences and no substantive rehabilitation discussion took place.  *See* Dkt. No. 17-12 at 30-37, 40, 45, 48-49.

In a decision dated December 30, 2010, the Appellate Division, Fourth Department, denied Petitioner's appeal.  *See id.* at 2.  The appellate panel concluded that Petitioner had failed to preserve for review both the issue with respect to prosecutorial misconduct and his insufficiency of the evidence argument.  *See id.*  The panel also held that the verdict was not against the weight of the evidence and his remaining claims were without merit.  *See id.*

Additionally Petitioner, with assistance of counsel, sought appeal on these same claims, except for one portion of the ineffective assistance of counsel claim, as he did not contend that trial counsel was ineffective by failing to make motions, to the New York Start Court of Appeals ("Court of Appeals").  *See* Dkt. No. 17-15.  By certificate dated March 9, 2011, the Court of Appeals denied Petitioner leave to appeal.  *See* Dkt. No. 17-17 at 2.


**E.      Petitioner's motion to vacate the judgment**

On November 3, 2007, Petitioner filed a *pro se* motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law section 440.10.  *See* Dkt. No, 17-3.  Petitioner argued that he received ineffective assistance of trial counsel in that his attorney failed to: (1) properly investigate his case — including his failure to read the file and interview witnesses present at the crime scene; (2) file an omnibus motion; (3) make motions to suppress evidence of out of court identifications or inquire whether police had probable cause for arrest; (4) impeach officer testimony at the *Huntley* hearing; (5) pursue an intoxication defense; (6) request proper jury instructions or object to the court's instructions; and (7) move for dismissal of indictment on

prosecutorial misconduct grounds. *See id.* at 7-8, 31-32. Petitioner alleges that "these cumulative errors prejudiced his trial and merit that his conviction be vacated." *See* Dkt. No. 17-7 at 3.

N.Y. Crim. Proc. Law section 440.10(2)(b) requires a court to deny a motion to vacate a judgment when "sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." N.Y. Crim. Proc. Law § 440.10(2)(b). On May 22, 2006, the Onondaga Supreme Court denied Petitioner's motion pursuant to this subsection as procedurally barred. *See* Dkt. No. 17-7 at 5. The court held that even if the motion to vacate was not procedurally barred, Petitioner's claims were without merit. *See id.* After review of the trial transcript and record the court found that Petitioner received "meaningful representation at all stages of his proceedings." *See id.* The court, among other findings, specifically noted counsel's preparedness, effectiveness in using evidence in cross-examinations, and zealous advocacy in combatting evidence of Petitioner's identification. *See id.* at 5-6, 8.

## III. DISCUSSION

**A.      Standard of review**

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted that

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or

> (2) was "based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding."

*Rodriguez v. Miller*, 439 F.3d 68, 73 (2d Cir. 2006), *cert. granted, judgment vacated and cases remanded on other grounds by* 549 U.S. 1163 (2007) (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed that

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did. [*Williams v.
> Taylor*, 529 U.S. 362] at 405-06, 120 S. Ct. 1495 [(2000)]; *Loliscio
> v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state court's
> decision is an "unreasonable application of" clearly established
> federal law if the state court "identifies the correct governing legal
> principle from [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts" of the case before it. *Williams*,
> 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that "'some increment of incorrectness beyond error'" is required for the habeas court to grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quotation omitted).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan*, 261 F.3d at 312 (quotation omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular federal claim or to relevant federal case law. *See id.*

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *see also Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

**B.      Review of a magistrate judge's report and recommendation**

When a party makes specific objections to a magistrate judge's recommendations, the district court engages in *de novo* review of the issues raised in the objections. *See Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (citation omitted). When a party fails to make specific objections, however, the court reviews the magistrate judge's recommendations for clear error. *See id.* at 306 (citation omitted); *see also Gamble v. Barnhart*, No. 02CV1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004) (citations omitted).

**C.      Exhaustion**

A petitioner in custody pursuant to a judgment of a state court is entitled to federal habeas relief only if he has exhausted all available state-court remedies. *See* 28 U.S.C. § 2254(b)-(c). A claim has been exhausted if it was fairly presented in the state courts, thereby giving the state the

"opportunity to pass upon and correct" alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509 (1971)). A petitioner need not have cited "book and verse on the federal Constitution" in his claim in state court for the claim to have been exhausted. *Picard*, 404 U.S. at 278 (quotation omitted). Rather, a petitioner may have fairly presented his claim to the state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegations of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of the State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).

As the Second Circuit has held, "to invoke 'one complete round of the State's established appellate review process', a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (quoting *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005)) (internal citation omitted). Applicants for leave to appeal must submit legal briefs and other documents to the New York State Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *See id.* (quotations omitted).

In *Smith v. Duncan*, the Second Circuit specifically stated that the New York State Court of Appeals would construe a petitioner's leave application as abandoning any claims that were presented to the Appellate Division, but not included in the leave application. *See id.* (quotation omitted). In *Grey v. Hoke*, the Second Circuit held that where a petitioner requested review by the New York State Court of Appeals of only one of the three issues raised in the Appellate

Division, the other two claims were not presented for exhaustion purposes. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). The court found that it would undermine the principles of comity to consider a constitutional claim as to which no ruling was requested from the state court. *See id.* (citation omitted).

If a petitioner has not exhausted his state-court remedies, but no longer has remedies available in state court with regard to these claims, they are "deemed" exhausted, but are also procedurally defaulted. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citations omitted). A state prisoner who has procedurally defaulted on a federal claim in a state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or that failure of the federal court to consider the claim will result in a miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991). A miscarriage of justice occurs if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 1. Ineffective Assistance of Counsel

In the present matter, Petitioner contends that he received ineffective assistance of trial counsel because counsel: (1) failed to file any pre-trial motions, specifically, a demand for discovery and inspection of grand jury minutes; (2) misrepresented the facts in his opening statement; (3) failed to renew a motion to dismiss after presenting defense's case; (4) failed to file any motions to set aside the verdict on the ground that there was insufficient evidence to establish Petitioner's participation in the crime; (5) failed to make contemporaneous objections to the prosecutor's remarks during defense counsel's summation; (6) failed to object when the

prosecution introduced into evidence or elicited testimony about a mask, flashlight, globes, and a baseball cap that had no nexus to him; (7) failed to impeach witnesses who suborned perjury; (8) failed to take exception to the court's ruling that Petitioner's statements that he was in the area to purchase marijuana could not be introduced during defense counsel's cross-examination of Timmerman; (9) failed to introduce medical records regarding his intoxication; and (10) failed to introduce mitigating evidence by expert witnesses.

As noted in Magistrate Judge Hummel's December 21, 2012 Report-Recommendation and Order, in Petitioner's direct appeal to the Appellate Division, he raised only claims (1), (3), (4), and (9). *See* Dkt. No. 28 at 13. In his application for leave to the Court of Appeals, Petitioner's ineffective assistance of counsel claim was stated as follows: "Defense counsel failed to conduct adequate investigation, particularly in to the issue of intoxication that would have served to vitiate intent or as an affirmative defense to the charges." *See* Dkt. No. 17-15 at 2. As such, liberally construed, Petitioner raised only claim (9), the intoxication issue, under the ineffective assistance of counsel claim. *See id.*

As discussed, exhaustion requires presentation of the claim to the highest state court from which a decision can be made, the Court of Appeals. *See Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982). Since Petitioner failed to include these additional claims in his application for leave to the Court of Appeals, his ineffective assistance of counsel claim is only exhausted with respect to the intoxication issue. All other issues are unexhausted and therefore will be reviewed only if Petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or that failure of the federal court to consider the claim will result in a miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991) (citation omitted).

Petitioner has failed to present any viable arguments establishing cause for the default and actual prejudice resulting therefrom, or that the failure to consider these claims will result in a miscarriage of justice. In his petition, traverse, and the four memoranda objecting to Magistrate Judge Hummel's Report-Recommendation and Order, Petitioner simply argues that he should prevail on the merits of these claims and fails to provide arguments in an effort to excuse his failure to exhaust. *See* Dkt. Nos. 5, 20, 26, 30, 32, 34, and 36. Although ineffective assistance of appellate counsel may constitute cause to excuse procedural default, Petitioner does not raise such a claim and such a claim would have to be first made in state court, which Petitioner failed to do. *See Fabricio v. Artus*, No. 06 Civ. 2049, 2013 WL 28487, *5 (S.D.N.Y. Jan. 3, 2013) (citations omitted).

Based on the foregoing, the Court finds that Petitioner's ineffective assistance of counsel claims, with the exception of his "intoxication" claim, are procedurally defaulted.

### 2. Legal sufficiency and weight of the evidence

Federal habeas review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729 (noting that the federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and legal state grounds) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." *Id.* (citation omitted). The independent and adequate state ground is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a habeas petition. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

In his Report-Recommendation and Order, Magistrate Judge Hummel recommended that the Court find that Petitioner's legal sufficiency claim was disposed of by the Appellate Division on independent and adequate state law grounds and, therefore, procedurally defaulted. *See* Dkt. No. 28 at 14-16. Specifically, the Appellate Division held that, since Petitioner "failed to renew his motion for a trial order of dismissal after presenting evidence," he failed to preserve his legal sufficiency claim for appellate review. *See* Dkt. No. 17-14 at 2. As such, the Appellate Division denied the claim pursuant to sections 330.30(1) and 470.05(2) of the New York Criminal Procedure Law. *See id.*

As Magistrate Judge Hummel correctly noted, section 470.05(2) of the New York Criminal Procedure Law has been held to be an independent and adequate state-law ground. *See Downs v. Lape*, 657 F.3d 97, 102-04 (2d Cir. 2011). The Appellate Division properly determined that Petitioner's counsel failed to renew his motion after presenting a defense.

Since this claim was dismissed on independent and adequate state-law grounds, it is procedurally defaulted, requiring Petitioner to show cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Petitioner makes no such showing. "Ineffective assistance of counsel can constitute 'cause' . . . only if it amounts to truly deficient representation as measured by Federal constitutional standards, and if the claim of ineffective assistance has been separately exhausted in state courts." *Swail*, 742 F. Supp. 2d at 360. Petitioner failed to exhaust all but one of his ineffective assistance claims and, as will be discussed below, those claims are nevertheless without merit.

Based on the foregoing, the Court denies the petition on this ground.[1]

### 3. Prosecutorial misconduct

In his amended petition, Petitioner contends that the prosecutor engaged in misconduct in the following ways: (1) denigrating the defense and vouching for the credibility of the prosecution's witnesses during summation; (2) introducing into evidence and eliciting testimony about a mask, flashlight, gloves, and a baseball cap that had no nexus to Petitioner; (3) failing to test the evidence seized by the police; (4) presenting false testimony indicating that Petitioner was wearing a mask and that the living room was well lit; and (5) withholding exculpatory material from the grand jury, *i.e.*, that Petitioner was not wearing a mask when Passino arrested him.

The Appellate Division found that Petitioner failed to preserve his claims of prosecutorial misconduct as required by N.Y. Crim. Proc. Law § 470.05(2), and the court declined to exercise its power to address "that contention as a matter of discretion in the interest of justice[.]" *See* Dkt. No. 17-14 at 2 (citing CPL § 470.15(6)(a)). As such, since these rules are wholly procedural and separate from federal law, they are an independent state law ground for the Appellate Division's decision denying this claim, Petitioner's claim is procedurally barred from federal review. *See Johnson v. Bellnier*, No. 09-CV-381, 2010 WL 7100915, *7 (E.D.N.Y. Nov. 8, 2010) (citing *Brown v. Ercole*, 353 Fed. Appx. 518, 520 (2d Cir. 2009)) (other citation omitted). Moreover, Petitioner does not present grounds for overcoming this procedural bar; he alleges neither (1) cause for the default and actual prejudice arising from the alleged violation of federal law; or (2) that failure to consider the claims would result in a fundamental miscarriage of justice. *See*

---

[1] As Magistrate Judge Hummel correctly found, Petitioner exhausted his weight of the evidence claim, which was disposed of on the merits by the Appellate Division, and raised by Petitioner in his application for leave to appeal to the Court of Appeals. *See* Dkt. No. 28 at 17.

*Coleman*, 501 U.S. at 750.

Based on the foregoing, the petition is denied on this ground.


### 4. Breach of judicial powers and fair trial

Petitioner claims that the trial court's failure to correct the prosecutor's misconduct when perjury was committed amounted to a breach of judicial powers. Further, Petitioner claims that he was deprived of a fair trial due to the cumulative errors created by his ineffective assistance of trial counsel, prosecutorial misconduct, and the trial court's failure to take corrective action when perjured testimony was presented.

Again, Petitioner failed to exhaust these claims. These claims were not presented to the Appellate Division or the Court of Appeals. *See* Dkt. No. 17-12 at 3. Once again, Petitioner has failed to present any viable arguments establishing cause for the default and actual prejudice resulting therefrom, or that the failure to consider these claims will result in a miscarriage of justice.

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly determined that the petition should be denied on this ground.


**D.     Merits**

### 1. Ineffective Assistance of Counsel

In his objections to Magistrate Judge Hummel's Report-Recommendation and Order, Petitioner argues that Magistrate Judge Hummel erred in determining that, "[e]ven if defense counsel pursued an intoxication defense by introducing the medical records, intoxication is not a complete affirmative defense but merely reduces the gravity of the offense by negating an

element of the crime charged." *See* Dkt. No. 28 at 25-26 (citing N.Y. Penal Law § 15.25); *see also* Dkt. No. 30 at 2-3. Further, Petitioner argues that, in the trial court's disposition of his section 440 motion, the court improperly determined that the failure to introduce medical records establishing intoxication was harmless because the prosecution did, in fact, contest the fact that he was intoxicated. *See* Dkt. No. 30 at 3-5. Petitioner claims that the state courts improperly held that defense counsel was not ineffective for failing to introduce his medical records, which establish that, after his arrest, Petitioner reported to hospital staff that he had consumed "two tablets of Ecstasy, and hospital staff determined that Petitioner had a strong odor of alcohol on his breath and he was 'clinically too intoxicated to be sent back to jail.'" *See id.* at 5-6 (emphasis and citation omitted). Petitioner argues that the evidence establishes that, contrary to the state court's and Magistrate Judge Hummel's Report-Recommendation and Order, trial counsel failed to pursue an intoxication defense, as demonstrated, in part, by his failure to request the relevant jury instructions in that regard. *See id.* at 6-8.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Under the standard promulgated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984), a defendant is required to satisfy a two-prong test in order to state a successful claim for the ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The habeas petitioner bears the burden of establishing both deficient performance and prejudice. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004)

(citation omitted).

The *Strickland* test with regard to counsel's performance is an objective one, which must take into account all of the circumstances of the case facing trial counsel at the time of his or her representation. *See Rompilla v. Beard*, 545 U.S. 374, 394 (2005) (holding that *Strickland* requires attorneys to behave "reasonab[ly] considering all the circumstances"); *accord Wood v. Allen,* 558 U.S. 290, 304 (2010) (holding that counsel's decision must be a "reasonable exercise of professional judgment" to comply with *Strickland*). "[S]trategic choices made by counsel after thorough investigation . . . are virtually unchallengeable," *Strickland*, 466 U.S. at 690-91; and, although there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance," *id.* at 689-90, counsel nevertheless "has a duty to make reasonable investigations, and a decision not to investigate will be reasonable only 'to the extent that reasonable professional judgments support the limitations on investigation,'" *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690-91; *see also Bell v. Cone*, 535 U.S. 685, 698 (2002). Stated another way, trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

In evaluating prejudice, the reviewing court must "look to the cumulative effect of all of counsel's unprofessional errors." *Gersten*, 426 F.3d at 611 (citing *Lindstadt*, 239 F.3d at 204) (holding that "[w]e need not decide whether one or another or less than all of these four errors would suffice, because *Strickland* directs us to look at the totality of the evidence before the judge or jury, 'keeping in mind that [s]ome errors [ ] have . . . a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture . . . .' We therefore consider these errors in the aggregate" (quotations and other citations omitted)).

Contrary to Petitioner's assertions, Magistrate Judge Hummel correctly determined that the state court's disposition of this claim was neither contrary to nor or unreasonable application of federal law. Petitioner's medical records, which were annexed to his C.P.L. § 440.10 motion, reflect that, following Petitioner's arrest, he reported to hospital staff that he took two tablets of Ecstasy, and hospital staff determined that he had a strong odor of alcohol on his breath and was "clinically too intoxicated to be sent back to jail." *See* Dkt. No. 17-4 at 64. Although Petitioner initially complained to hospital staff that he had "overdosed," the medical record goes on to state that Petitioner "was alert and oriented; and after he calmed down in the emergency department, really he states that he has no complaint. He is not injured. He is not ill and he has no ongoing medical problems that he admits." *See id.*

Although counsel could have pursued an intoxication defense and sought to introduce these records, intoxication is not a complete defense and merely reduces the gravity of the offense by negating an element of the crime charged. *See Ware v. New York*, 412 F. Supp. 2d 236, 246 (W.D.N.Y. 2005) (holding that intoxication is not a complete affirmative defense and that "it merely reduces the gravity of the offense by negating an element of the crime charged" (citations omitted)). Moreover, an intoxication defense would have been contradictory to the objectively reasonable and plausible defense that was pursued by counsel; namely that Petitioner was at the scene of the crime but was not involved in the criminal activity. Here, there was good reason to believe that the jury would discount an argument that Petitioner was incapable of forming the requisite intent to commit a crime in Males' home and to forcibly steal property given the active role that all three intruders played during the commission of the crime. *See People v. Robinson*, 161 A.D.3d 676 (2d Dept. 2000) (holding that "even an intoxicated person may be capable of forming the requisite intent" to commit a crime).

Petitioner's remaining unexhausted claims of ineffective assistance of counsel fair no better. The Court has reviewed these claims and finds that Magistrate Judge Hummel correctly recommended that the Court find that Petitioner failed to establish that counsel's representation of Petitioner fell below an objective standard of reasonableness or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See* Dkt. No. 28 at 20-26.

Based on the foregoing, the Court finds that Magistrate Judge Hummel correctly determined that Petitioner's ineffective assistance of counsel claims should be denied on the merits.

### 2. Sufficiency and weight of the evidence

Review of a conviction as against the "weight of the evidence" is a product of New York state statute and, therefore, merely a state-law issue. *See* N.Y. Crim. Proc. Law § 470.15; *Ward v. Herbert*, 509 F. Supp. 2d 253, 264 & n.3 (W.D.N.Y. 2007) (citations omitted). Since federal habeas corpus review is not available to remedy mere errors of state law, *see Estelle*, 502 U.S. at 67-69, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial, *see Ward*, 509 F. Supp. 2d at 264 & n.3 (citations omitted). A challenge to the sufficiency of the evidence, however, is amenable to federal habeas review. *See Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

To analyze the sufficiency of the evidence of a state conviction, "'[a] federal court must look to state law to determine the elements of the crime.'" *Id.* (quotation omitted). A habeas petition based on the evidentiary sufficiency of a state-court conviction fails if "*any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard places a "'heavy burden'" on a habeas petitioner. *See United States v. Parkes*, 497 F.3d 220, 225 (2d Cir. 2007) (quotation and other citations omitted).

In the present matter, Petitioner was convicted of burglary in the first degree, attempted robbery in the second degree, and assault in the second degree. Under New York law, burglary in the first degree is committed when a person "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in the immediate flight therefrom, he or another participant in the crime . . . causes physical injury to any person who is not a participant in the crime." N.Y. Penal Law § 140.30(2). Section 10.00(9) of the Penal Law explains that physical injury "means impairment of physical condition or substantial pain." To establish attempted robbery in the second degree, the prosecution must prove that the defendant attempted to "forcibly steal property," and "in the course of the commission of the crime," caused "physical injury to any person who was not a participant in the crime." N.Y. Penal Law § 160.10(2)(a). Finally, assault in the second degree is committed when a person, "[i]n the course of and in furtherance of the commission or attempted commission of a felony, . . . or of immediate flight therefrom, he, or another participant . . . causes physical injury to a person other than one of the participants[.]" N.Y. Penal Law § 120.05(6).

As Magistrate Judge Hummel correctly determined, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner guilty of the crimes charged. The prosecution established through M. Males' testimony that three men entered K. Males' house without permission. Two men went upstairs in search of Stevens, while one man held down M. Males and threatened to kill her if she did not find what he was looking for. When

21

the police arrived at the crime scene, they saw that two men were fleeing the house, one of whom was identified as Petitioner. Further, the police recovered objects outside the house that witnesses testified were associated with the three house intruders. Testimony also established that one of the assailants struck Stevens, a non-participant of the crime, who suffered a large welt on his cheek that required icing and pain medication. *See* Dkt. No. 17-19 at 338-39.

The testimony and other evidence introduced at trial permitted a rational jury to conclude that Petitioner of the three crimes for which he was convicted. As such, the Court finds that Magistrate Judge Hummel correctly determined that the Court should Petitioner's sufficiency of the evidence claim.

To the extent that Petitioner is asserting that the verdict was against the weight of the evidence, this claim must fail because such a claim is not cognizable on federal habeas review. *See Ward*, 509 F. Supp. 2d at 264 & n.3 (citations omitted).


### 3. Petitioner's remaining claims

Petitioner does not specifically object to Magistrate Judge Hummel's determination of his remaining claims – *i.e.*, prosecutorial misconduct, "breach of judicial powers," and right to a fair trial. *See* Dkt. Nos. 30, 32, 34 & 36. Having reviewed these claims and Magistrate Judge Hummel's recommendations, the Court finds that Magistrate Judge Hummel correctly determined that they are without merit and that the Court should deny the petition on these grounds. *See* Dkt. No. 28 at 30-34.


**E.** **Certificate of Appealability**

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a

circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from — (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[2] 28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).  Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

After carefully considering Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of

---

[2] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case.

**IT IS SO ORDERED.**

Dated: June 17, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge